Dalmatinsko Dobrotvorno Drustvo Sveti Frano Imotski, Appellant, v. First Union Trust and Savings Bank, Appellee.

### Gen. No. 36,064.

Heard in the second division of this court for the first district at the June term, 1932. ▉▉▉▉▉ Opinion filed November 22, 1932. Rehearing denied December 3, 1932.

B. M. STEINER, for appellant.

NAT M. KAHN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In a first class action in assumpsit, tried before a jury, the court at the conclusion of all the evidence instructed them to return a verdict in favor of defendant, and, after such verdict had been returned, entered judgment against plaintiff for costs. The main contention on this appeal is that the court erred in giving such instruction for defendant and in entering the judgment.

In plaintiff's statement of claim it is alleged in substance that on May 14, 1931, it had on deposit with defendant bank the sum of $1,789.65, under pass book No. 500,354; that on May 21, it withdrew the sum of $50 from the account, leaving a balance of $1,739.65; that on May 27, it presented a regular withdrawal order or receipt to the bank and demanded payment of said balance of $1,739.65; that it then informed the

bank that its said pass book had been lost or stolen and requested the issuance of a new one; that the bank refused to honor said withdrawal order or to pay all of said claimed balance and informed plaintiff that it (the bank) had paid the sum of $1,100 out of the account "on a withdrawal order dated May 14, 1931"; that plaintiff had not at any time authorized or directed the bank to pay out of the account the sum of $1,100, and if so paid out by the bank it "was paid out *negligently* and without the authority, direction or consent of plaintiff"; and that the bank is indebted to plaintiff in the sum of $1,100, etc.

In its affidavit of merits the bank admitted that on May 14, 1931, plaintiff society had on deposit said sum of $1,789.65, as evidenced by said pass book, and that thereafter the society withdrew from the account the sum of $50. It alleged that on May 15, there was presented to the bank plaintiff's "regular withdrawal order or receipt against the sum of money on deposit as aforesaid, dated May 14, 1931, for the sum of $1,100," that said withdrawal order "was properly executed by plaintiff's duly authorized officers," that the pass book was at the same time presented, and that defendant "in good faith and without any notice whatsoever that said pass book had been lost or stolen," or had otherwise passed from plaintiff's possession, "paid to the person who presented said withdrawal order and book the sum of $1,100." And the bank denied that it had paid out said sum of $1,100 negligently or without the authority and direction of plaintiff, or that it owed plaintiff the sum of $1,100.

The following facts in substance were disclosed from the evidence: The particular savings account, No. 500,354, was opened in March, 1924. At that time and prior thereto and in May, 1931, Stipe Zugo was the trusted secretary of plaintiff society. In February, 1930, the society adopted a resolution, to the effect that

withdrawals from said account with defendant bank might be made by any *two* of four officers of the society, viz., John Dujmich, Mate Perkovich, Ante Bekovic and Zugo, and a copy of the resolution was delivered to the bank. Thereafter, when any sum of money was withdrawn from the account, a "withdrawal order," or "receipt," on a form furnished by the bank, was signed by said officers and presented to the bank, sometimes by two of said officers and sometimes by Zugo alone, and the money in the amount stated in the order or receipt was paid either to the two officers or to Zugo alone. About May 14, 1931, Zugo, on the usual form, drafted in his handwriting an order or receipt, dated May 14, 1931, wherein it is stated: "Received of First Trust and Savings Bank,....Hundred Dollars, $—100, which amount charge to my account, pass book No. 500,354." Zugo, in whom the other officers of the society then had confidence, presented the instrument, as drafted and signed by him, to said other officers and it was successively signed by Dujmich, Perkovich and Bekovic. Thereupon Zugo, in the blank before the word "Hundred" wrote in lighter and different ink the word "Eleven" (thereby making the order for eleven hundred dollars, instead of "hundred"). On May 15, Zugo presented the order, as so changed, to the usual teller of the bank, who knew him. Noticing that the numerals on the order ($100) did not correspond with the words "Eleven hundred," the teller made several lines in ink over the numerals $100 and wrote immediately thereunder the numerals "$1100." And thereupon Zugo received $1,100 from the bank, through said teller, and thereafter absconded, converted said amount to his own use, and ceased to be a member of plaintiff society. A photostatic copy of the instrument is contained in the transcript and the original instrument has been temporarily impounded with the clerk of this court.

After a careful examination of the instrument and considering all the facts and circumstances in evidence, we are of the opinion that the court erred in instructing the jury to return a verdict for defendant. We think that it was for the jury to say upon proper instructions whether the teller was guilty of negligence in cashing the order for $1,100, and whether that negligence was the proximate cause of the loss of $1,000 to the plaintiff society, or whether the other officers of the society (as claimed by defendant), in signing the order in the condition it was when presented to them by Zugo, were guilty of such negligence as bars a recovery by the society. In *Offutt v. World's Columbian Exposition,* 175 Ill. 472, 473, 474, it is said:

"An instruction to find against the party upon whom rests the burden of proof, on the ground that there is no evidence legally tending to prove his cause,—or, as it is now more generally stated, on the ground that the evidence, with all the *inferences* which the jury could justifiably draw from it, is so insufficient to support a verdict for such party that such a verdict, if returned, must for that reason be set aside,—is in the nature of a demurrer to the evidence, and, except as to technical methods of procedure, is governed by the same rules. The maker of the motion to so instruct admits the truth of all opposing evidence, and *all inferences* which may be fairly and rationally drawn from it. The motion does not involve a determination of the weight of the evidence nor the credibility of witnesses."

And in the same case it is further said (p. 476):

"The province of the jury must not be invaded, . . . , and where reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions the evidence must be submitted to the jury." (See, also, *Whalen v. Utica Hydraulic Cement Co.,* 103 Ill. App. 149, 152; *Norris v. Illinois Cent. R. Co.,* 88 Ill. App. 614, 618.)

We do not think that all reasonable minds would agree that the bank, acting through its teller, was not guilty of any negligence in cashing the order or receipt in question, particularly when consideration is given to the entire instrument, wherein it appears that the word "eleven," before the word "hundred," is in lighter and different ink, and the act of the teller in changing the numerals on the instrument from "$100" to $1100." A reasonable caution on his part would suggest that a new order or receipt be executed by all the signers before the money was paid out, or at least that he make some inquiry of said signers. Furthermore, it will be noticed that although the instrument is in the form of a receipt or withdrawal order, it amounts to a draft on the bank to pay out money to the society which it has on deposit with the bank. In the case of *Crawford v. West Side Bank,* 100 N. Y. 50, 53–55 (cited in *United States Cold Storage Co. v. Central Mfg. Dist. Bank,* 343 Ill. 503, 513, 514), it is said:

"The relation existing between a bank and its depositor, is, in a strict sense, that of debtor and creditor; but in discharging its obligation as a debtor, the bank must do so subject to the rules obtaining between principal and agent.

"In disbursing the customer's funds, it can pay them only in the usual course of business, and in conformity to his directions. In debiting his account it is not entitled to charge any payments except those made at the time when, to the person whom, and for the amount authorized by him. . . . It receives the depositor's funds upon the implied condition of disbursing them according to his order, and upon an accounting is liable for all such sums deposited, as it has paid away without receiving valid direction therefor. The bank is from necessity responsible for any omission to discover the original terms and conditions of a check, once properly drawn upon it, because at the time of pay-

ment, it is the only party interested in protecting its integrity, who has the opportunity of inspection, and it therefore owes the duty to its depositors of guarding the fund intrusted to it from spoliation. This liability arises, although an alteration of a material part of his order has been effected, even though it be done so skillfully as to defy detection by examination. . . .

"*The question of negligence cannot arise unless* the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come. The theory that a party who makes and issues commercial paper, properly and *carefully* drawn, to express the liability which he intends to assume, is chargeable with negligence on account of the criminal act of another in altering it after its issue, would render him a warrantor against such acts and is repugnant to justice and reason." (See, also, *Chicago Savings Bank v. Block,* 126 Ill. App. 128, 130–1.)

Our conclusion is that this case, under its particular facts, is one for a jury under proper instructions to pass upon, and accordingly the judgment appealed from is reversed and the cause is remanded.

*Reversed and remanded.*

KERNER, P. J., and SCANLAN, J., concur.